**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**BERNADETTE LITHGOW**,

       Plaintiff,

vs.                             No.    **CIV 04-0046 MCA/DJS**

**STATE OF NEW MEXICO,
NEW MEXICO WORKERS'
COMPENSATION ADMINISTRATION**,
**KEN PAYNE**, in his official and individual
capacity, **DANA CHAVEZ**, in her official
and individual capacity, and **PAUL BARBER**,
in his official and individual capacity,

       Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

     **THIS MATTER** comes before the Court on *Defendants' Motion to  Dismiss Count I (In Part), Count II (In Part), Count III (In part), and Count VI of Plaintiffs' Complaint* [Doc. No. 18] filed on October 25, 2004, *Defendants' Motion for Summary Judgment* [Doc. No. 21] filed on November 9, 2004, and the Court's *sua sponte* inquiry concerning the status of Defendant Ken Payne.  Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants the Defendants' motions and dismisses this action with prejudice for the reasons set forth below.

## I.   <u>BACKGROUND</u>

On January 16, 2004, Plaintiff Bernadette Lithgow filed this civil action against Defendants State of New Mexico, New Mexico Workers' Compensation Administration (WCA), Ken Payne, Dana Chavez, and Paul Barber.  Plaintiff alleges that Defendants acted unlawfully by harassing her, retaliating against her, and terminating her employment based on her political affiliations with the Isshin Ryu Club (IRC).  Specifically, Plaintiff alleges that Defendants violated her right to freedom of association under the "First and Fourth" Amendments to the United States Constitution, as well as her right to equal protection under the Fourteenth Amendment to the United States Constitution.  Plaintiff also alleges that Defendants breached their employment contract with her and violated an implied covenant of good faith and fair dealing.

The record does not reflect that Defendant Payne was ever served with the *Summons* or *Complaint* within the 120-day time limit provided in Fed. R. Civ. P. 4(m).  Consequently, no one has entered an appearance on his behalf.  On October 25, 2004, all of the other Defendants (referenced collectively as "Defendants") moved to dismiss some of Plaintiffs' claims on several grounds, including Eleventh Amendment immunity, sovereign immunity under the New Mexico Tort Claims Act  (NMTCA), the fact that the State is not a "person" within the meaning of 42 U.S.C. § 1983, and the fact that the Fourth Amendment does not guarantee an individual's right to freedom of association.  [Doc. No. 18, 19.]  Plaintiff conceded that Counts I, II, and III of his *Complaint* are subject to dismissal in part insofar as they assert claims against Defendants State of New Mexico and WCA, or against

Defendants Chavez and Barber in their official capacities.  [Doc. No. 20, 31.]  Accordingly, on December 28, 2004, the Court entered a stipulated order dismissing Counts I, II, and III of Plaintiff's *Complaint* as to these Defendants.  [Doc. No. 32.]

On November 9, 2004, Defendants moved for summary judgment as to all of the claims that were not addressed in their motion to dismiss.  [Doc. No. 21.]  Specifically, the claims which are the subject of Defendants' summary-judgment motion include the claims for breach of contract and breach of an implied covenant of good faith and fair dealing, which are asserted in Counts IV and V of Plaintiff's *Complaint*, as well as the freedom of association and equal-protection claims asserted against the individual Defendants in their personal capacities in Counts I, II, or III.  The undisputed facts and evidence of record relating to this motion can be summarized as follows.

Plaintiff was a classified state employee from December 8, 1992, until July 9, 2002. [Ex. A.] The New Mexico Personnel Act and the State Personnel Rules allow classified state employees to be disciplined for "just cause" and set forth procedures for taking such disciplinary action.  [Ex. B.]  On January 16, 2002, while employed as a Compliance Officer in Defendant WCA's Employer Compliance Bureau, Plaintiff received a fifteen-day suspension based on Defendant Barber's findings that she had violated Defendant WCA's Code of Ethics, and other rules, in her handling of an investigation concerning IRC's workers' compensation insurance.  [Ex. A.]

According to Defendant Barber's findings, Defendant WCA's Employer Compliance Bureau received an insurance rejection notice regarding IRC on October 31, 2001, and the

case was initially assigned to Plaintiff to investigate based on a system in which each compliance officer is assigned a particular portion of the alphabet.  At the time the case was initially assigned to her, however, Plaintiff did not fully disclose to her supervisor that she also was a vice-president, registered agent, and member of the Board of Directors of IRC. Plaintiff proceeded to obtain records and make contact with IRC's Director, advising him of the need to get workers' compensation insurance as soon as possible and giving him the names of three insurance companies to call for insurance.  She did not, however, refer the case to Defendant WCA's legal department after learning that the elements of a prima-facie case of non-compliance had been satisfied.  [Ex. A.]

On November 5, 2001, the case was reassigned to another compliance officer after Plaintiff's supervisor learned of the conflict of interest arising from Plaintiff's affiliation with IRC.  Nevertheless, Plaintiff continued her efforts to assist IRC in obtaining worker's compensation insurance during her working hours.  In particular, Plaintiff used her state vehicle to deliver an insurance premium for IRC to an insurance agency during working hours on the morning of November 19, 2001.  She also used Defendant WCA's fax machine on November 20, 2001, to send and receive insurance application materials for IRC that required her signature as a corporate officer.  In addition, she contacted the compliance officer assigned to replace her on the IRC case and attempted to influence her decision with respect to whether the matter should be referred to the WCA's legal department.  [Ex. A.]

Defendant Barber also found that Plaintiff had been dishonest about the above activities in the following respects.  First, she had not disclosed her status as a board

member, corporate officer, and registered agent of IRC when the case was initially assigned to her.  Second, she attempted to conceal the fact that she was delivering the insurance premium for IRC during her working hours on the morning of November 19, 2001.  [Ex. A.]

As a result of Defendant Barber's findings regarding the above incident, Plaintiff was suspended from January 18, 2002, through February 7, 2002.  Her employment with the WCA was subsequently terminated on July 5, 2002, based on the following additional findings by Defendant Barber.  [Ex. A.]

Plaintiff received unsatisfactory performance evaluations in July 2001 and February 2002 indicating a need for improvement.  The specific areas requiring improvement included failure to forward cases to the WCA's Legal Department after a *prima facie* case of non-compliance was established, failure to properly document case actions, unresponsiveness to requests from supervisors, and continuing to conduct business for IRC during working hours even after the incident in November 2001 which resulted in Plaintiff's suspension.  [Ex. A.]

Defendant Barber also found that Plaintiff continued to behave in a dishonest manner with respect to the November 2001 incident regarding IRC's workers' compensation insurance.  In particular, he found that on March 25, 2002, Plaintiff approached two of her co-workers and asked them to sign written statements regarding the above incident that were false and deceptive.  The co-workers refused to sign these statements.  [Ex. A.]

Finally, Defendant Barber found that Plaintiff had been dishonest and insubordinate in failing to carry out her job duties with respect to conducting worksite visits during the week of February 25, 2002.  When first asked why she did not conduct these worksite visits,

Plaintiff alleged that she had a medical condition that prevented her from accomplishing these tasks.  She initially refused to provide medical information from a physician to substantiate these allegations, and when such information was eventually provided, the physician's statement was not consistent with Plaintiff's allegations.  [Ex. A.]

Based on his findings regarding the above misconduct, Defendant Barber issued a Notice of Final Disciplinary Action on July 5, 2002, terminating Plaintiff's employment with the WCA as of July 9, 2002.  Plaintiff appealed both her suspension in January 2002 and her termination in July 2002 to the State Personnel Board (SPB).  Her appeal was heard by an Administrative Law Judge (ALJ) on December 10, 2002, through December 12, 2002.  [Ex. A.]

The issues presented and decided in the SPB proceeding encompassed whether Plaintiff's employment was suspended and later terminated for just cause, as well as:

1.      Whether the disciplinary action was appropriate/justified given the facts and circumstances of the case.

2.      Whether the reasons for suspension were purely pretextual in nature.

3.      Whether [Plaintiff's] procedural and substantive due process rights were evaluated.

4.      Whether [Plaintiff] was treated in a disparate manner in the terms, conditions and privileges of employment.

[Ex. F.]  The ALJ specifically found by a preponderance of the evidence that the WCA had met its burden of proving the instances of misconduct and insubordination summarized above.  The ALJ also found that:  (1) this misconduct provided just cause for the discipline

imposed by the WCA, (2) Plaintiff was afforded procedural due process, and (3) Plaintiff did not show, by evidence of record, that employer pretext for the suspension of her employment was present, or that her dismissal was imposed as a result of pretext.   [Ex. A.]

The SPB adopted the ALJ's recommended findings of fact and conclusions of law in a *Decision* dated June 9, 2003, affirming Plaintiff's suspension and her dismissal from employment with the WCA.  [Ex. G.]  Plaintiff appealed the SPB's decision to the Second Judicial District Court of the State of New Mexico (hereinafter "State Court") on July 9, 2003. [Ex. H.]  Defendant WCA filed a motion to dismiss Plaintiff's appeal on October 27, 2003, which the State Court granted on December 16, 2003.  [Ex. I, J.]  Plaintiff then proceeded to file this civil action in the United States District Court for the District of New Mexico on January 16, 2004. [Doc. No. 1.]  In response to Defendants' motion for summary judgment, she submitted an affidavit setting forth her version of the events described above. [Lithgow Aff.]

## II.   <u>ANALYSIS</u>

### A.   <u>Supplemental Jurisdiction</u>

Some of the claims asserted in Plaintiff's *Complaint* arise under federal law, while others arise under state law.  As diversity of citizenship is not alleged in this case, Plaintiff's state-law claims are before this Court only by virtue of the supplemental jurisdiction conferred by 28 U.S.C. § 1367(a).  "The district courts may decline to exercise supplemental jurisdiction over a claim under [28 U.S.C. § 1367](a) if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Before doing so,

however, the Court must consider whether the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction over the state-law claims.  See Anglemyer v. Hamilton County Hosp., 58 F.3d 533, 541 (10th Cir. 1995).  In this case, the Court concludes that these factors weigh in favor of retaining jurisdiction because Plaintiff's state-law claims are closely intertwined with her federal claims, rely on largely the same set of facts, and are subject to disposition based on clearly established law.  Hence, the Court elects to exercise supplemental jurisdiction over Plaintiff's state-law claims and resolve all of the claims addressed in Defendants' motions in this *Memorandum Opinion and Order*.

### B.      Defendants' Motion to Dismiss

As noted above, Plaintiff stipulated to the dismissal with prejudice of Counts I, II, and III against Defendants State of New Mexico, WCA, Chavez (in her official capacity), and Barber (in  his official capacity).  Accordingly, my discussion of Defendants' *Motion to Dismiss* [Doc. No. 18] filed on October 25, 2004, is limited to the issues of whether Plaintiff's *Complaint* fails to state claims upon which relief may be granted under the Fourth Amendment to the United States Constitution or laws of the State of New Mexico concerning "wrongful retaliatory discharge."

Under Fed. R. Civ. P. 12(b)(6), dismissal of a complaint for failure to state a claim is appropriate only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of h[er] claim which would entitle h[er] to relief.'"  GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir.1997) (quoting Conley v. Gibson,

355 U.S. 41, 45-46 (1957)).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir.1991).  Accordingly, all well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party.  GFF Corp., 130 F.3d at 1384.

"In addition to the complaint, the . . . [C]ourt may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002).  Thus, "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." GFF Corp., 130 F.3d at 1384.  The Court "'may also take judicial notice of matters of public record' without converting a 12(b)(6) motion into a motion for summary judgment." Henson v. CSC Credit Servs., 29 F.3d 280, 284 (7th Cir. 1994).

Even assuming the facts alleged in the *Complaint* to be true, Plaintiff offers no authority to support the proposition that the Fourth Amendment guarantees a right to "freedom of association."  Rather, the constitutional right to freedom of association referenced in Counts I and II of Plaintiff's *Complaint* arises under the First Amendment and is applicable to state actors by virtue of the Fourteenth Amendment.  See generally Duncan

v. Louisiana, 391 U.S. 145, 147-48 (1968) (listing provisions in the Bill of Rights that are incorporated in the Fourteenth Amendment).  Indeed, it appears that the reference to the Fourth Amendment in Plaintiff's *Complaint* may have been a typographical error, wherein Plaintiff intended to write "Fourteenth" instead of "Fourth."  For these reasons, Counts I and II of Plaintiff's *Complaint* are dismissed in part against all Defendants insofar as they rely on the Fourth Amendment instead of the First and Fourteenth Amendments.

Defendants also move to dismiss Count VI of Plaintiff's *Complaint* based on the sovereign immunity afforded by the New Mexico Tort Claims Act (NMTCA) and the absence of a cause of action for retaliatory discharge when the employee in question is protected by the State Personnel Act.  Plaintiff asserts, without citing any pertinent authority, that such a cause of action exists under New Mexico law and that sovereign immunity is waived in this instance by Section 41-4-21 of the NMTCA, which states that the other provisions of that statute "shall not affect the provisions of any personnel act, any rules or regulations issued thereunder or any other provision of law governing the employer-employee relationship."  N.M. Stat. Ann. § 41-4-21 (Michie 1978 & Supp. 1996).

Contrary to Plaintiff's assertions, the New Mexico Court of Appeals has held that Section 41-4-21 of the NMTCA does not provide a waiver of sovereign immunity.  See Rubio v. Carlsbad Mun. Sch. Dist., 106 N.M. 446, 448, 744 P.2d 919, 921 (Ct. App. 1987). "Read in context, it simply means that if a waiver of immunity exists that would entitle an injured party to bring a claim, the Tort Claims Act shall not affect personnel acts, rules or regulations, or other provisions of law governing the employer-employee relationship."  Id.

In this case, no waiver of immunity exists that would entitle Plaintiff to bring a separate claim for "wrongful retaliatory discharge" outside the framework provided in the State Personnel Act for appealing her discharge to the SPB and the State Court, which is discussed later in this *Memorandum Opinion and Order*.  See Rubio, 106 N.M. at 448, 744 P.2d at 921.

Moreover, New Mexico courts have expressly held that a cause of action for retaliatory discharge is not available to employees protected by the State Personnel Act.  See Barreras v. State Corr. Dep't, 2003-NMCA-027, ¶¶ 22-23, 133 N.M. 313, 62 P.3d 770 (citing Silva v. Am. Fed'n of State, County & Mun. Employees, 2001-NMSC-038, ¶¶ 12-13, 131 N.M. 364, 37 P.3d 81).  Therefore, Count VI of the *Complaint* is dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

C.     **Defendants' Motion for Summary Judgment**

With respect to the remaining claims, Defendants have moved for summary judgment under Fed. R. Civ. P. 56.  That rule provides that the Court may enter summary judgment when the motion papers, affidavits, and other evidence submitted by the parties show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  A "genuine issue" exists where the evidence before the Court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving party as to that issue.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986).  An issue of fact is "material" if under the substantive law it is

essential to the proper disposition of the claim.  See id. at 248.  Judgment is appropriate "as a matter of law" if the non-moving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670-71 (10th Cir. 1998).

When an individual defendant raises the affirmative defense of qualified immunity in a summary-judgment motion, the burden shifts to the plaintiff to establish that the defendant's actions violated a constitutional or statutory right and that the right at issue was clearly established at the time of the defendant's unlawful conduct.  See Medina v. Cram, 252 F.3d 1124, 1128-29 (10th Cir. 2001); Gross v. Pirtle, 245 F.3d 1151, 1155-56 (10th Cir. 2001).  If the plaintiff fails to meet this burden, then the Court must grant the defendant qualified immunity.  See Gross, 245 F.3d at 1156.

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial).  See Celotex Corp., 477 U.S. at 324; Wright-Simmons v. City of Okla. City, 155 F.3d 1264, 1268 (10th Cir. 1998).  "To survive summary judgment, 'nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient.'"  Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir. 1995) (quoting Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir.1991)).  Thus, "[h]earsay testimony cannot be considered" in ruling on a summary-judgment motion.  Gross v.

-12-

Burggraf Constr. Co., 53 F.3d 1531, 1541 (10th Cir. 1995); see also Starr v. Pearle Vision, Inc., 54 F.3d 1548, 1555 (10th Cir. 1995) (applying this rule to inadmissible hearsay testimony in depositions).

Apart from these limitations imposed by the Federal Rules of Evidence, it is not the Court's role to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment. Rather, the Court assumes the admissible evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all admissible evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor. See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

In this case, the Court's analysis relies primarily on undisputed facts which establish the preclusive effect of prior state proceedings. Under the doctrines of collateral estoppel and *res judicata*, legal consequences may flow from the fact that the State Court and the SPB entered decisions containing statements which signaled that they had considered certain issues. Even if the truth of such statements is disputed, I may still consider them as verbal acts or operative facts insofar as legal consequences flow from their utterance. See generally Echo Acceptance Corp. v. Household Retail Servs., Inc., 267 F.3d 1068, 1087 (10th Cir. 2001). My reference to such statements is not intended to suggest that this Court is making independent factual findings about the weight of the disputed evidence discussed in the written decisions of the state tribunals.

## 1.     __Preclusive Effect of Prior State Proceedings__

Defendants assert that all of Plaintiff's remaining claims are barred by the doctrines of *res judicata* and collateral estoppel as a result of the prior state proceedings.  The Full Faith and Credit Clause in Article VI of the United States Constitution, as implemented by 28 U.S.C. § 1738, generally requires that "federal courts give the same preclusive effect to a State's judicial proceedings as would the courts of the State rendering the judgment." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 222 (1985).

Accordingly, I first discuss whether Plaintiff's remaining claims are precluded under the State of New Mexico's doctrine of *res judicata* (or claim preclusion).  See Strickland v. City of  Albuquerque, 130 F.3d 1408, 1411 (10th Cir. 1997) (determining whether to give preclusive effect to prior state judgment by applying state's rules of *res judicata*).  I then turn to the issue of whether any remaining claims are precluded under the State of New Mexico's doctrine of collateral estoppel (or issue preclusion).  See Phelps v. Hamilton, 122 F.3d 1309, 1318 (10th Cir. 1997) (determining whether to give preclusive effect to prior state judgment by applying that state's rules of collateral estoppel).

With respect to both of these preclusion doctrines, New Mexico law requires a preliminary inquiry as to whether they should apply to proceedings or decisions of an administrative agency.  New Mexico courts follow the general rule that

> the findings of an administrative body may be given preclusive effect in later civil trials if, in addition to meeting the traditional elements of the preclusion doctrine at issue, it is shown that the administrative body:  (1) while acting in a  judicial or quasi-judicial capacity, (2) resolved disputed questions of fact

properly before it, and (3) provided the parties with a full and fair opportunity
to litigate the issue at an administrative hearing.

Southworth v. Santa Fe Servs., Inc., 1998-NMCA-109, ¶ 12, 125 N.M. 489, 963 P.2d 566

(citing Shovelin v. Central N.M. Elec. Coop., Inc., 115 N.M. 293, 298, 850 P.2d 996, 1001

(1993)).  The factors to be weighed in determining whether the administrative proceeding

"provided Plaintiff with a full and fair opportunity to litigate include Plaintiff's incentive to

litigate in the administrative forum, procedural differences between the two forums, and

policy considerations."  Padilla v. Intel Corp., 1998-NMCA-125, ¶ 10, 125 N.M. 698, 964

P.2d 862 (citing Rex, Inc. v. Manufactured Hous. Comm., 119 N.M. 500, 505, 892 P.2d 947,

952 (1995)).

Applying these principles, the New Mexico Court of Appeals has applied the doctrine

of *res judicata* to bar relitigation of contract claims that could have been raised before a

municipal personnel board.  See Chavez v. City of Albuquerque, 1998-NMCA-004, ¶ 19,

124 N.M. 479, 952 P.2d 454.  The New Mexico Court of Appeals also has held that the SPB

acts in a quasi-judicial capacity.  See Martinez v. N.M. State Engr. Office, 2000-NMCA-074,

¶ 22, 129 N.M. 413, 9 P.3d 657 (citing  Montoya v. Dep't of Fin. & Admin., 98 N.M. 408,

412, 649 P.2d 476, 480 (Ct.App.1982)); State ex rel. N.M. State Highway Dep't v. Silva, 98

N.M. 549, 553, 650 P.2d 833, 837 (Ct. App. 1982).  "In hearing appeals and thus acting in

its quasi-judicial capacity, the [SPB] conducts evidentiary hearings and makes findings of

fact and conclusions of law" concerning the issues properly before it, as shown by the

decisional documents from the SPB that Defendants have submitted as exhibits in this case.

-15-

Id. ¶ 23.  [Ex. A, F, G.]  Thus, the first two requirements identified in Southworth, 1998-NMCA-109, ¶ 12, are satisfied with respect to the administrative proceedings at issue here.

Under these circumstances, it is Plaintiff's burden to show that she was denied a full and fair opportunity to litigate in the proceedings before the SPB.  See Padilla, 1998-NMCA-125, ¶ 9.  Plaintiff has not come forward with evidence to meet this burden.  Rather, the undisputed facts and evidence of record show that the proceedings before the SPB "generally resemble trials in court," with opportunities for discovery, cross-examination, and the like.  Id. ¶ 12.  [Ex. A, F, G.]  As for Plaintiff's incentive to litigate in an administrative proceeding before the SPB, the New Mexico Court of Appeals has concluded that the remedies available in such proceedings do not differ significantly from the compensatory damages that a plaintiff might otherwise obtain in a civil action for breach of contract.  See Barreras, 2003-NMCA-027, ¶ 15.  "From an economic perspective, the relief afforded in the State Personnel Act mirrors the core of what is ordinarily available as compensatory damages in a breach-of-employment-contract lawsuit."  Id.  Thus, after considering the factors set forth in Padilla, 1998-NMCA-125, ¶¶ 10-23,  I conclude that Plaintiff was afforded a full and fair opportunity to litigate in the administrative proceedings which resulted in the SPB's decision affirming the suspension and termination of Plaintiff's employment.  It follows that the SPB's involvement in the prior state proceedings does not present a barrier to the application of the preclusion doctrines at issue here.

a.    *Res Judicata*

I next turn to the doctrine of *res judicata*, or claim preclusion, as articulated by New Mexico courts.  Under New Mexico law, *res judicata* "applies when four elements are met: (1) identity of parties or privies, (2) identity of capacity or character of persons for or against whom the claim is made, (3) same cause of action, and (4) same subject matter.'"  City of Las Vegas v. Oman, 110 N.M. 425, 432, 796 P.2d 1121, 1128 (Ct. App. 1990) (quoting Three Rivers Land Co. v. Maddoux, 98 N.M. 690, 694, 652 P.2d 240, 244 (1982)); accord Strickland, 130 F.3d at 1411.  "In addition, there must have been a final decision on the merits, and the parties must have had a full and fair opportunity to litigate the issues arising out of the claim," as noted above.  Oman, 110 N.M. at 432 (quoting Slide-a-Ride of Las Cruces, Inc. v. Citizens Bank of Las Cruces, 105 N.M. 433, 437, 733 P.2d 1316, 1320 (1987)).

I conclude that Defendants WCA and the State of New Mexico meet the first two elements of *res judicata* in this case because these two governmental entities are in privity with one another or share a relationship of vicarious responsibility, and Defendant WCA was a party to the prior proceeding.  However, the doctrine of *res judicata* may not bar all of Plaintiff's claims against Defendants Payne, Chavez, and Barber because, in their individual capacities, they were not parties to the prior proceeding against Defendant WCA.

For purposes of a federal civil-rights claim, the Tenth Circuit has held that "[g]overnment employees in their individual capacities are not in privity with their government employer."  Willner v. Budig, 848 F.2d 1032, 1034 (10th Cir. 1988); cf.

Maddoux, 98 N.M. at 694, 652 P.2d at 244 (noting that *res judicata* requires "identity of capacity or character of persons for or against whom the claim is made").  This rule may not affect the application of *res judicata*, however, when "'two persons have a relationship such that one of them is vicariously responsible for the conduct of the other.'"  Ford v. N.M. Dep't of Pub. Safety, 119 N.M. 405, 409, 891 P.2d 546, 550 (Ct. App. 1994) (quoting Restatement, supra, § 51(1)); accord Gonzalez v. Hernandez, 175 F.3d 1202, 1205 (10th Cir. 1999).  To the extent that Section 51(1) of the Restatement does not apply to the individual Defendants in this case, I separately examine, in a later portion of this *Memorandum Opinion and Order*, whether these Defendants may still benefit from the doctrine of collateral estoppel even if *res judicata* does not apply.  See Willner, 848 F.2d at 1034 (applying doctrine of collateral estoppel to individual Defendants); Silva v. State, 106 N.M. 472, 474-76, 745 P.2d 380, 382-84 (1987) (allowing for non-mutual collateral estoppel).

Plaintiff presents two objections to the application of *res judicata* and collateral estoppel in this case.  First, she asserts that the prior proceeding did not result in a final judgment on the merits because her appeal to the State Court was dismissed on procedural grounds.  Second, she asserts that her present claims are not the same as those decided in the prior state proceeding.

I first address Plaintiff's assertion that the prior state proceedings should not have any preclusive effect here because she is asserting different claims in this action.  In determining whether two proceedings concern the same cause of action and the same subject matter for

purposes of *res judicata*, New Mexico courts follow the transactional approach articulated

in the Restatement (Second) of Judgments, §§ 24, 25 (1980).  Under this approach,

> "(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar ..., the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

> "(2) What factual grouping constitutes a 'transaction,' and what groupings constitute a 'series,' are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."

Maddoux, 98 N.M. at 694, 652 P.2d at 245 (quoting Restatement, supra, § 24); accord Ford,

119 N.M. at 413, 891 P.2d at 554.  The Tenth Circuit also follows this transactional

approach.  See Wilkes v. Wyoming Dep't of Employment, 314 F.3d 501, 504 (10th Cir.

2003); Strickland, 130 F.3d at 1411.

Applying this approach, both the Tenth Circuit and the New Mexico Court of Appeals

have held that "'where the thrust of both lawsuits is whether the plaintiff was wrongfully

discharged, an adverse judgment in the first suit bars the second.'" Strickland, 130 F.3d at

1412 (quoting Ford, 119 N.M. at 413, 891 P.2d at 554).   This holding follows from the

principle that "all claims arising from the same employment relationship constitute the same

transaction or series of transactions for claim preclusion purposes." Wilkes, 314 F.3d at 504.

The application of this principle is supported here by the "substantial, if not complete,

overlap in terms of the witnesses and proof relevant to both actions," as well as the similarity

"in terms of time, space, and origin" of the factual allegations in both actions.  <u>Strickland</u>, 130 F.3d at 1412; <u>accord</u> <u>Ford</u>, 119 N.M. at 413-14, 891 P.2d at 554-55.  In particular, the transactions or occurrences which Plaintiff now alleges to constitute "harassment" and "retaliation" are part of the same series of transactions or occurrences which were previously found to be non-pretextual disciplinary measures that were supported by just cause.  The reasons for these disciplinary measures and the motives behind them were previously scrutinized in the proceedings before the SPB.

Plaintiff cannot avoid this conclusion simply by  attacking the same series of events under different legal theories.  The doctrine of *res judicata* applies to *all* claims arising out of the same transaction or series of transactions and does not depend on whether such claims "'were actually asserted in the original action.'"  <u>Strickland</u>, 130 F.3d at 1413 (quoting <u>Ford</u>, 119 N.M. at 414, 891 P.2d at 555).  In other words, *res judicata* "bars not only claims that were raised in the prior proceeding, but also claims that could have been raised."  <u>City of Sunland Park v. Macias</u>, 2003-NMCA-098, ¶ 18, 134 N.M. 216, 75 P.3d 816.

The claims asserted by Plaintiff in the present action could have been joined with those raised in the prior state proceedings.  In this regard, the New Mexico Court of Appeals has held that the jurisdiction of the SPB may cover contract claims under state law insofar as the State Personnel Act and the rules promulgated thereunder form the basis for such claims in this context.  <u>See</u> <u>Barreras</u>, 2003-NMCA-027, ¶ 21; <u>cf.</u> <u>Chavez v. City of Albuquerque</u>, 1998-NMCA-004, ¶¶ 5, 25-28 (reaching similar conclusions with respect to a municipal personnel board).  The same court also has held that the SPB does not have

jurisdiction to adjudicate violations of federal civil-rights laws.  See Martinez v. N.M. State Eng'r Office, 2000-NMCA-074, ¶ 27, 129 N.M. 413, 9 P.3d 657; Chavez, 1998-NMCA-004, ¶ 12.  But Plaintiff's federal civil-rights claims could have been joined with Plaintiff's appeal from the SPB decision to the State Court because the State Court has original jurisdiction over such civil-rights violations.  See Strickland, 130 F.3d at 1412-13; Chavez, 1998-NMCA-004, ¶ 10, 13.  It follows that the "same cause of action" element of res judicata is met in this case with respect to both Plaintiff's federal civil-rights claims and her state-law claims.

I next address the question of whether the prior state proceeding resulted in a final judgment on the merits for purposes of res judicata.  Under New Mexico law, "[s]o-called technical, procedural failings, if they result in dismissal of a case with prejudice, are sufficient to provide the foundation for claim preclusion," or res judicata.  Hope Community Ditch Ass'n v. N.M. State Eng'r, 2005-NMCA-002, ¶¶ 9-10, 105 P.3d 314 (collecting cases), cert. denied, 2004-NMCERT-12, 103 P.3d 1097.  In this case, the record reflects that both the SPB and the State Court dismissed Plaintiff's appeals with prejudice.

The State Court's dismissal was based on Plaintiff's failure to comply with Rule 1-074(J)(1) NMRA 2003, which requires that "the appellant's statement shall be filed and served within thirty (30) days from the date of service of the notice of filing of the record on appeal in the district court."  Rule 1-074 is a special rule of civil procedure that applies to appeals from administrative agencies to the district courts where there is a statutory right of review.  The State Personnel Act provides for appeals by employees to the SPB, as well as

appeals to the State Court by a party aggrieved by a decision of the SPB.  See N.M. Stat. Ann. § 10-9-18 (Michie 2004).  Such appeals to the State Court are governed by the procedures set forth in N.M. Stat. Ann. § 39-2-1.1 (Michie 2004), which in turn incorporate certain rules adopted by the New Mexico Supreme Court, including Rule 1-074.

Under this procedural framework, the State Court's review of the issues and claims decided by the SPB is based on the administrative record rather than a trial de novo.  See generally N.M. Reg. & Licensing Dep't v. Lujan, 1999-NMCA-059, ¶¶ 7-8, 127 N.M. 233, 979 P.2d 744 (interpreting N.M. Stat. Ann. § 10-9-18(G)); N.M. State Bd. of Psychologist Exam'rs v. Land, 2003-NMCA-034, ¶ 5, 133 N.M. 362, 62 P.3d 1244 (interpreting N.M. Stat. Ann. § 39-3-1.1); cf. Strickland, 130 F.3d at 1410 (noting similar procedure under municipal ordinance).  Thus, with respect to the state-law contract claims that could have been raised before the SPB and for which Plaintiff failed to perfect an appeal in a timely manner, the SPB's decision constitutes a final judgment on the merits for purposes of res judicata.  See Chavez, 1998-NMCA-004, ¶ 19; cf. Hope Community Ditch Ass'n, 2005-NMCA-002, ¶ 10 (noting that "a dismissal of an appeal for failure to file a timely notice of appeal results in a dismissal with prejudice"); Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 400 (1981) (similar).

On the other hand, the State Court's order of dismissal also may be considered a final judgment on the merits for purposes of res judicata insofar as Plaintiff's civil-rights claims could have been raised in the first instance in that forum.  In similar circumstances, the Tenth Circuit has found no barrier to the joinder of federal civil-rights claims under 42 U.S.C. §

1983 in a state-court action challenging the employment decision of an administrative agency, even where the administrative agency lacked jurisdiction over such claims.  See Strickland, 130 F.3d at 1412-13.  Further, the New Mexico Court of Appeals  has "applied *res judicata* to preclude claims made after the same claims were dismissed in an earlier case for failure to timely prosecute."  Hope Community Ditch Ass'n, 2005-NMCA-002, ¶ 10.

Based on these authorities, I conclude that the State Court's order of dismissal constitutes a final judgment on the merits for purposes of *res judicata* notwithstanding the fact that it was based on a failure to comply with a provision of Rule 1-074 NMRA 2003 and that Plaintiff elected not to join any federal civil-rights claims in that action.  As all of the elements of *res judicata* are satisfied in this case based on the undisputed facts and evidence of record concerning the prior state proceedings, Plaintiff is precluded from relitigating any of her remaining claims in this action against Defendants WCA and the State of New Mexico.  She is also precluded from relitigating any remaining claims against the individual Defendants which rely on the type of relationship of vicarious responsibility articulated in Ford, 119 N.M. at 409, 891 P.2d at 550.

### b.      Collateral Estoppel

My analysis now turns to the doctrine of collateral estoppel, which provides an alternative basis for precluding Plaintiff's remaining claims in the event that the individual Defendants do not meet the first and second elements of *res judicata* based on the considerations raised in Willner, 848 F.2d at 1034.  The doctrine of collateral estoppel

"differs from the doctrine of *res judicata* in not requiring the identity of prior and subsequent actions." DeLisle v. Avallone, 117 N.M. 602, 605, 874 P.2d 1266, 1269 (Ct.App.1994).

> Before collateral estoppel is applied to preclude litigation of an issue, however, the moving party must demonstrate that (1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation.

Shovelin, 115 N.M. at 297, 850 P.2d at 1000 (citing Silva, 106 N.M. at 474-76, 745 P.2d at 382-84). "If the movant introduces sufficient evidence to meet all elements of this test, the trial court must then determine whether the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the prior litigation," as previously noted. Id.

Failure to pursue an appeal of the SPB's decision in a timely manner renders that decision final for purposes of collateral estoppel. See Grieve v. Tamerin, 269 F.3d 149, 13-54 (2d Cir. 2001). The doctrine of collateral estoppel, however, "precludes the litigation of only those issues necessary to support the judgment entered in the first action." Haring v. Prosise, 462 U.S. 306, 315 (1983). Thus, in order for the doctrine of collateral estoppel to apply, it is not enough that the issues or claims in the present action *could* have been raised in the prior proceedings before the SPB. Rather, the doctrine of collateral estoppel only applies to ultimate issues of fact or law that *actually* were litigated and necessarily determined in the prior proceedings. See Willner, 848 F.2d at 1034.

In this case, the issues of just cause and pretext as they relate to the disciplinary actions taken against Plaintiff were actually litigated in the administrative proceedings before

the ALJ, as reflected in the Stipulated Pre-Hearing Order [Ex. F] and the ALJ's summary of the proceedings [Ex. A].  These issues were also necessarily decided in the SPB's decision adopting the ALJ's proposed findings of fact and conclusions of law, which expressly determined that there was just cause for the suspension and termination of Plaintiff's employment and that these actions were not pretextual.  [Ex. A, G.]

The SPB's ruling on these issues was necessary to its decision to affirm the suspension and termination of Plaintiff's employment because, under the State Personnel Act, Defendants could not have taken these disciplinary actions against Plaintiff unless they were based on a just cause, and the cause asserted by Defendants would not be just if it were merely a pretext used to conceal an improper motive.  See N.M. Stat. Ann. § 10-9-18(F) (Michie 2004); Barreras, 2003-NMCA-027, ¶ 12; Lujan, 1999-NMCA-059, ¶ 20.  Under the SPB Rules, "[j]ust cause occurs when an employee engages in behavior that is inconsistent with the employee's position.  Just cause can include misconduct, incompetency or insubordination."  Lujan, 1999-NMCA-059, ¶ 17 (citations omitted).  "In order to find just cause, 'the [SPB] is required to determine not only that there was employee misconduct but also that the agency's discipline was appropriate in light of that misconduct.'"  Martinez, 2000-NMCA-074, ¶ 30 (quoting Gallegos v. N.M. State Corr. Dep't, 115 N.M. 797, 802, 858 P.2d 1276, 1281 (Ct.App.1992)).

While the SPB generally does not have jurisdiction to decide whether civil-rights laws are violated, the SPB Rules do contain a "non-discrimination policy statement," and "an ALJ as an evidentiary matter may decide whether the reasons offered by the employer for a

termination are pretext for discrimination." Id. ¶¶ 28-29, 129 N.M. 413, 9 P.3d 657.  A claim of pretext is relevant not only to the ALJ's evidentiary determination of whether the employer's assertions are credible with respect to the alleged cause of the disciplinary action, but also to the ultimate question of whether the level of discipline imposed is reasonable in light of the employee's conduct, which may involve an inquiry into the level of discipline imposed on other employees for similar conduct.  See id. ¶ 44.  Thus, when allegations of pretext and discrimination are raised in such administrative proceedings, the SPB necessarily must scrutinize the reasons for the employer's actions and the motives behind those actions in order to determine whether they were supported by just cause.

    For these reasons, I conclude that the ALJ's recommended determinations regarding just cause and pretext were necessary to the SPB's decision to affirm the suspension and dismissal of Plaintiff's employment in this case.  It follows that the SPB's determination of the issues of just cause and pretext are to be given preclusive effect in the present action under the doctrine of collateral estoppel.

    I recognize that Plaintiff has asserted different legal theories in this action and that the SPB lacked jurisdiction to decide whether Plaintiff has a valid claim for violation of her constitutional rights to freedom of association and equal protection.  See id. ¶ 27. Nevertheless, the SPB did decide certain issues within its jurisdiction that may form essential elements of Plaintiff's claims under the legal theories she is currently pursuing.  Cf. Padilla, 1998-NMCA-125, ¶ 8 (giving dispositive and preclusive effect to prior administrative determination concerning issue of proximate cause which formed an essential element of

negligence claim in subsequent court proceeding). Accordingly, I must next determine what preclusive effect, if any, the SPB's prior determination of the issues of just cause and pretext will have on Plaintiff's ability to satisfy the essential elements of the remaining claims she wishes to assert in the present action. I address each of these claims separately.

### 2.   Plaintiff's Contract Claims

Counts IV and V of Plaintiff's *Complaint* respectively assert claims for breach of contract and breach of an implied covenant of good faith and fair dealing. Specifically, Plaintiff alleges that Defendants breached their employment contract with her, including the implied covenant noted above, by suspending and terminating her employment and by "harassing" and "retaliating" against her based on her "political affiliations" with IRC. [Doc. No. 1.]

Plaintiff's contract claims do not rest on any admissible evidence that the individual Defendants acted outside the scope of their employment, or that they entered into any contract with Plaintiff that is separate and apart from her employment contract with the institutional Defendants, WCA and the State of New Mexico. Thus, there is no basis for asserting contract claims against the individual Defendants. See Bourgeous v. Horizon Healthcare Corp., 117 N.M. 434, 437-38, 872 P.2d 852, 855-56 (1994).

To the extent that any contract claims remain, the SPB's prior determination of the issues of just cause and pretext precludes Plaintiff from prevailing on an essential element of those claims, *i.e.*, whether there was a breach of the terms of the contract, and whether there was a breach of an implied covenant of good faith and fair dealing. As noted above,

the New Mexico Court of Appeals has recognized that contract claims are within the jurisdiction of the SPB and may be encompassed by the SPB's determination of just cause insofar as the State Personnel Act and its implementing regulations provide the terms of a classified state employee's contract.  See Barreras, 2003-NMCA-027, ¶ 21; cf. Chavez, 1998-NMCA-004, ¶¶ 25-28.  While Plaintiff attempts to recharacterize Defendants' actions as "harassment" and "retaliation" rather than legitimate disciplinary measures, the SPB already rejected these attempts in its determination that the suspension and termination of Plaintiff's employment was supported by just cause and was not pretextual.  It follows that Plaintiff's claim for breach of contract is precluded by the prior state proceedings.

New Mexico courts also recognize that "every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement." Watson Truck & Supply Co. v. Males, 111 N.M. 57, 60, 801 P.2d 639, 642 (1990) (citing Restatement (Second) of Contracts § 205 (1981)).  This implied covenant, however, does not "override express provisions addressed by the terms of an integrated, written contract." Melnick v. State Farm Mut. Auto. Ins. Co., 106 N.M. 726, 731, 749 P.2d 1105, 1110 (1988).  Further, "tort remedies are not available for breach of the implied covenant in an employment contract." Bourgeous, 117 N.M. at 439, 872 P.2d at 857.  Thus, such an implied covenant cannot be used as a basis for changing the express terms of Plaintiff's employment contract to require something more than just cause, or to convert any claim based on her employment contract into a tort claim.

"Whether there has been a breach of the covenant of good faith and fair dealing is a factual inquiry that focuses on the contract and what the parties agreed to." Gilmore v. Duderstadt, 1998-NMCA-086, ¶ 24, 125 N.M. 330, 961 P.2d 175.  Such an inquiry allows the factfinder to go beyond the mere text of the employment contract itself and inquire into the reasons, intentions, or motives behind the actions taken pursuant to that contract.  See, e.g., Kestenbaum v. Pennzoil Co., 108 N.M. 20, 22-23, 766 P.2d 280, 282-83 (1989) (affirming trial court's use of a jury instruction stating that "the implied covenant of good faith and fair dealing requires in the traditional sense a moral quality equated with honesty of purpose, freedom from fraudulent intent and faithfulness to duty or obligation"); cf. Continental Potash, Inc. v. Freeport-McMoran, Inc., 115 N.M. 690, 706, 858 P.2d 66, 82 (1993) ("The breach of this covenant requires a showing of bad faith or that one party wrongfully and intentionally used the contract to the detriment of the other party.").

The SPB has the authority to engage in such an inquiry in making its determinations about just cause.  See Martinez, 2000-NMCA-074, ¶¶ 28-30.  In this case, the SPB did so by adopting the ALJ's express findings and conclusions regarding the issues of just cause and pretext.  The SPB's prior determination of this issue precludes Plaintiff from prevailing on her claim that an implied covenant of good faith and fair dealing was breached in this instance.

### 3.      Plaintiff's First Amendment Claim to Freedom of Association

Plaintiff asserts a First Amendment claim against the individual Defendants based on her allegation that she was subjected to harassment and retaliation because of her "political

affiliations" with IRC.  [Doc. No. 1.]  In order to evaluate this claim, I must first determine

whether IRC is the type of organization which may give rise to a constitutionally protected

right to freedom of association.

The United States Constitution protects two distinct forms of "freedom of

association":

> In one line of decisions, the [Supreme] Court has concluded that choices to
> enter into and maintain certain intimate human relationships must be secured
> against undue intrusion by the State because of the role of such relationships
> in safeguarding the individual freedom that is central to our constitutional
> scheme. In this respect, freedom of association receives protection as a
> fundamental element of personal liberty. In another set of decisions, the
> [Supreme] Court has recognized a right to associate for the purpose of
> engaging in those activities protected by the First Amendment--speech,
> assembly, petition for the redress of grievances, and the exercise of religion.
> The Constitution guarantees freedom of association of this kind as an
> indispensable means of preserving other individual liberties.

Roberts v. United States Jaycees, 468 U.S. 609, 617-18 (1984).

While these two types of constitutionally protected associations may coincide, see id.

at 618, in this case Plaintiff presents no admissible evidence that could reasonably support

a claim that IRC falls within the category of an intimate association "distinguished by such

attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain

the affiliation, and seclusion from others in critical aspects of the relationship," id. at 620.

In this regard, I note Plaintiff's own affidavit stating that IRC is a "highly visible public

outreach organization" [Lithgow Aff. ¶¶ 3, 5], and the materials submitted by Defendants

which indicate that IRC "is a non-profit, community-based organization designed to provide

educational, recreational, and enrichment activities to Albuquerque youth."  [Ex. C.]  These

self-described attributes are not consistent with the type of intimate association for which constitutional protection is recognized.

Rather, IRC is more akin to the type of organization wherein people may associate to some degree "for the purpose of engaging in those activities protected by the First Amendment--speech, assembly, petition for the redress of grievances, and the exercise of religion." Id. at 618.  In this regard, Plaintiff has submitted an affidavit stating that, among other things, IRC "is active in promoting the Martin Luther King Holiday here in Albuquerque" and sponsors its own parade, in which "the local chapter of the NAACP marches." [Lithgow Aff. ¶¶ 4, 5, 6.]  Defendants have submitted contrary evidence, noting the language in IRC's Articles of Incorporation which states that:  "no substantial part of the activities of this corporation shall be the carrying on of propaganda or otherwise attempting to influence legislation, and the corporation shall not participate in, or intervene in . . . any political campaign on the behalf of any candidate for public office."  [Ex. D.]

The language cited by Defendants is included in the Articles of Incorporation so that IRC may qualify as a non-profit corporation under Section 501(c)(3) of the Internal Revenue Code.  [Ex. D.]  In this context, the Court does not view the constitutional protections afforded to expressive association and the requirements for eligibility under Section 501(c)(3) of the Internal Revenue Code to be mutually exclusive.  Accordingly, the Court will assume for purposes of analysis that IRC is an organization engaged in some degree of expressive association that is protected by the First Amendment, notwithstanding its 501(c)(3) status.

This assumption does not necessarily mean that Plaintiff can prevail on the First Amendment claim alleged here.  Unlike Roberts, 468 U.S. at 623, Plaintiff is not challenging any direct effort by Defendants to regulate IRC's membership or otherwise "interfere with the internal organization or affairs of the group."  In particular, she is not bringing a civil action on IRC's behalf to challenge the requirement that IRC obtain workers' compensation insurance or to enjoin Defendant WCA from taking enforcement action against IRC.  Rather, Plaintiff brings this action on her own behalf, and her allegations are more akin to those in which the Government is accused of seeking "to impose penalties or withhold benefits from individuals because of their membership in a disfavored group."  Id. at 622 (citing Healy v. James, 408 U.S. 169, 180-184 (1972)).

In Healy, 408 U.S. at 192-93, the Supreme Court recognized that state actors may enforce "reasonable regulations with respect to the time, the place, and the manner" in which constitutionally protected association takes place, and that such constitutional protections do not constitute a license "to flout these rules."  It is also important to recognize that Plaintiff's allegations in this case do not arise in the context of a public forum such as a university campus or a street parade, but rather in the context of her employment with Defendant WCA. In the employment context, the Supreme Court has held that, "[i]n addition to time, place, and manner regulations, the state may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 46 (1983).

The Supreme Court has employed a four-part balancing test for determining whether a public employer's actions impermissibly infringe on the free-speech rights of its employees under the First Amendment. See Pickering v. Bd. of Educ., 391 U.S. 563 (1968); Board of Comm'rs, Wabaunsee County v. Umbehr, 518 U.S. 668, 675-76 (1996). Under this test, the Court first must decide whether the speech at issue touches on a matter of public concern. If it does, the Court must balance the interest of the employee in making the statement against the employer's interest in promoting the efficiency of the public services it performs through its employees. If these prerequisites are met, then the speech is protected, and the Court next considers whether the employee has shown that her expression was a motivating factor in the detrimental employment decision. Finally, even if the employee sustains this burden, the employer can still prevail if it shows by a preponderance of the evidence that it would have made the same decision regardless of the protected speech. See id. at 568; Schalk v. Gallemore, 906 F.2d 491, 494-95 (10th Cir.1990).

Courts are in general agreement that "[s]tate employees' freedom of expressive association claims are analyzed under the same standard as state employees' freedom of speech claims." Akers v. McGinnis, 352 F.3d 1030, 1036 (6th Cir. 2003); accord Rode v. Dellarciprete, 845 F.2d 1195, 1204 (3rd Cir. 1988); Klug v. Chicago Sch. Reform Bd. of Tr's, 197 F.3d 853, 857 (7th Cir. 1999); Hatcher v. Bd. of Pub. Educ. and Orphanage for Bibb County, 809 F.2d 1546, 1558 (11th Cir. 1987) (citing Smith v. Arkansas State Highway Employees, Local 1315, 441 U.S. 463, 465 (1979) (per curiam)). "Because the analytic tools for adjudicating First Amendment retaliation claims under the Free Speech Clause have been

so extensively developed, courts in this and other circuits have tended to import fully that reasoning when litigants have characterized their claims as arising under another First Amendment clause." Thaddeus-X v. Blatter, 175 F.3d 378, 390 (6th Cir.1999) (en banc) (collecting cases).

There is some conflict, however, as to whether the first element of the Pickering balancing test should apply in the context of a First Amendment claim for freedom of association. See Lunow v. City of Okla. City, 61 Fed. Appx. 598, 2003 WL 1605863, at *5 (10th Cir. Mar. 28, 2003) (unpublished disposition recognizing a split among other circuits). In the Seventh Circuit, for example, "a public employee is protected from adverse employment consequences based on the exercise of the right to freedom of association only when the associational conduct relates to a matter of public concern." Klug, 197 F.3d at 857. The Eleventh Circuit, on the other hand, has concluded that "application of a requirement that associational activity relate to a matter of public concern in order to be constitutionally protected would overturn Supreme Court and Eleventh Circuit jurisprudence and exact a substantial toll upon first amendment liberties." Hatcher, 809 F.2d at 1558. Accordingly, in the Eleventh Circuit "no such requirement applies in this context," and the employee need only "demonstrate that she engaged in protected activity" in order to satisfy the first element of the Pickering test. Id. But cf. Shahar v. Bowers, 114 F.3d 1097, 1102-03 (11th Cir. 1997) (en banc) (concluding that governmental restrictions on the right of association do not require strict scrutiny in the public employment context).

-34-

I find it unnecessary to choose among these conflicting authorities because, even assuming that Plaintiff's associational activities satisfy the first element of the Pickering test, the SPB's prior determination of the issues of just cause and pretext precludes her from satisfying other elements of this test under the doctrine of collateral estoppel.  Employees who claim that adverse employment action was taken against them based upon the exercise of their associational rights must show not only that they were engaged in constitutionally protected conduct, but also that such conduct "was a 'substantial' or 'motivating factor' in the government employer's decision."  Rode, 845 F.2d at 1204 (quoting Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).  The requirement that the constitutionally protected conduct be a substantial or motivating factor in the employer's decision is sometimes called the "causation" element of the Pickering test.  See, e.g., Lunow, 2003 WL 1605863, at *6.

Plaintiff cannot satisfy this causation element here because the SPB already has determined that there was just cause for Defendants' actions in suspending and terminating her employment, and that the cause asserted by Defendants was not pretextual.  In making these prior determinations, the SPB necessarily decided to reject Plaintiff's allegation that these actions were instead caused by an improper motive such as a discriminatory animus against the IRC or persons associated with that organization.  Accordingly, the preclusive effect of the SPB's prior determination means that Plaintiff cannot satisfy the causation element of her First Amendment claim.

-35-

It may be true that, in a technical sense, Plaintiff's affiliation with IRC was a "but for" cause of some of the disciplinary actions taken against her, insofar as Defendants' reasons for the suspension and termination of Plaintiff's employment included her practice of conducting business for IRC during her working hours as an employee of Defendant WCA. In this narrow technical sense, however, Plaintiff's affilation with IRC does not support a First Amendment claim because the restrictions on conducting IRC business during working hours fall into the category of regulating the "time, place, and manner" of the employees' associational activities, or simply reserving the employment forum for its intended purpose of accomplishing the business of Defendant WCA.  Neither form of regulation gives rise to a First Amendment violation in this context, given the SPB's prior determinations regarding the issues of just cause and pretext.  See Perry Educ. Ass'n, 460 U.S. at 46 (recognizing that the State may reserve the employment forum for its intended purposes); Healy, 408 U.S. at 192-93 (recognizing that the State may impose reasonable "time, place, and manner" restrictions on associational activity in a limited public forum).

Further, the Court must balance Plantiff's interest in associating with IRC during her working hours against Defendants' interest in promoting the efficiency of the public services it performs through its employees.  See Pickering, 391 U.S. at 568.  This balance weighs in favor of allowing Defendants' to enforce Defendant WCA's rules regarding conflicts of interest as well as the rules regarding use of state equipment and conducting one's personal affairs during working hours.  For these reasons, I determine as a matter of law that the activities which Plaintiff undertook on IRC's behalf during her working hours as an

employee of Defendant WCA do not constitute constitutionally protected expressive association because they do not pass the second element of the <u>Pickering</u> test. It follows from the above analysis that Defendants are entitled to summary judgment on Plaintiff's First Amendment claims.

### 4.   Plaintiff's Equal Protection Claim

Plaintiff also asserts that her Fourteenth Amendment right to equal protection was violated because other employees of Defendant WCA were treated differently in that they were not disciplined for engaging in similar activities during their working hours. She cites <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000), in support of the proposition that the Equal Protection Clause applies to a claim brought by a "class of one" where there is no rational basis for treating the one-member class differently than other similarly situated persons.

To succeed on such an equal protection claim, Plaintiff must prove that she was "singled out for persecution due to some animosity," meaning that the actions of Defendants were a "spiteful effort to 'get' [her] for reasons wholly unrelated to any legitimate state activity." <u>Bartell v. Aurora Public Schools</u>, 263 F.3d 1143, 1149 (10th Cir.2001) (quotation omitted). In addition, Plaintiff must prove that she was treated differently than those similarly situated. <u>See</u> <u>id.</u>

The SPB already addressed these elements in its prior determination that Defendants' actions were supported by just cause and were not pretextual. For example, the ALJ's recommended findings and conclusions, which were adopted by the SPB, specifically

addressed Plaintiff's contention that her supervisor bore some responsibility for assigning the IRC case to her and should have been equally aware of the conflict of interest. [Ex. A.] The ALJ's findings and conclusions, as adopted by the SPB, also addressed whether Defendant was unfairly singled out for using the fax machine for IRC business. In these findings and conclusions, the ALJ and the SPB declined to sustain a charge that *de minimis* use of the fax machine violated the rule against unauthorized use of state equipment, but they reasoned that the discipline imposed was still justified by other factors, such as repeated instances of dishonesty, that distinguished Plaintiff's behavior from that of other employees who may have been similarly situated with respect to their use of the fax machine. [Ex. A.]

These aspects of the prior state proceedings emphasize the extent to which the determination of just cause encompassed the issue of whether Defendants' actions had a rational basis and whether Plaintiff was treated differently than other similarly situated employees. As noted above, the SPB is authorized to scrutinize an employer's motives in making such determinations and may examine how other similarly situated employees are treated in order to determine whether the level of discipline imposed was reasonably related to the severity of the employee's misconduct or insubordination. See Martinez, 2000-NMCA-074, ¶¶ 28-30. I conclude that the SPB necessarily decided such issues in reaching its decision to affirm the suspension and termination of Plaintiff's employment, and therefore Plaintiff is precluded from relitigating these issues under the guise of an equal-protection theory. It follows that Defendants are entitled to summary judgment on Plaintiff's equal protection claim.

### D.    **Status of Defendant Ken Payne**

The record does not reflect that Defendant Ken Payne was served with the *Summons* and *Complaint* within the 120-day time limit prescribed by Fed. R. Civ. P. 4(m).  Ordinarily, the failure to timely serve a defendant will result in a dismissal without prejudice as to that Defendant.  See id.   In this instance, however, the above analysis of Plaintiff's claims against the other Defendants indicates that it would be futile to allow an extension of time for service of process as to Defendant Payne at this juncture because all of Plaintiff's claims against this Defendant are subject to dismissal with prejudice for failure to state a claim upon which relief may be granted, or under the doctrines of collateral estoppel and *res judicata*.

The application of these doctrines in this context is governed by clearly-established law which Plaintiff's counsel either ignores or fails to distinguish. See, e.g., Strickland, 130 F.3d at 1412; Ford, 119 N.M. at 413, 891 P.2d at 554; Chavez, 1998-NMCA-004, ¶ 19. Similarly, Plaintiff's attempt to assert a cause of action for wrongful retaliatory discharge in this context is also foreclosed by clearly established authorities that Plaintiff's counsel fails to acknowledge. See Silva, 2001-NMSC-038, ¶¶ 12-13; Barreras, 2003-NMCA-027, ¶¶ 22-23; Rubio, 106 N.M. at 448, 744 P.2d at 921.  Finally, the allegations in Plaintiff's *Complaint* contain no specific allegations that would distinguish Defendant Payne from the other Defendants for purposes of applying the authorities discussed above.  For these reasons, I conclude that Plaintiff's claims against Defendant Payne are also subject to dismissal with prejudice.

III.    **CONCLUSION**

For the foregoing reasons, the Court concludes that Defendants' motion to dismiss and motion for summary judgment are due to be granted, and this action must be dismissed with prejudice as to all remaining claims and parties.

**IT IS, THEREFORE, ORDERED** that the *Defendants' Motion to Dismiss Count I (In Part), Count II (In Part), Count III (In part), and Count VI of Plaintiffs' Complaint* [Doc. No. 18] is **GRANTED**.

**IT IS FURTHER ORDERED** that *Defendants' Motion for Summary Judgment* [Doc. No. 21] is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is dismissed with prejudice as to all remaining claims and parties.

**SO ORDERED**, this 28th day of February, 2005, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge